# A. Rollins, use of Molder and Parker, *v.* Callender and Wife and Hughes.

Hughes, under an execution in favor of himself, bought a lot of land which had been previously mortgaged to secure the payment of two promissory notes, which remained unpaid. The mortgage, by mistake, described the notes as falling due on the first days of January, 1837 and 1838; whereas the notes were actually payable on the first days of May, 1837 and 1838. This mortgage was duly recorded, but Hughes claimed to be a *bona fide* purchaser for a valuable consideration without notice of the mistake in the mortgage. Held by the court, that the mortgage was sufficient notice to put Hughes upon his inquiry, which would have readily led to a knowledge of the mistake in the description of the notes. Whatever has a reasonable certainty as to time, circumstances and persons, is sufficient to put a party upon inquiry, and amounts to evidence of notice to him.

To constitute a *bona fide* purchaser, there must be a parting with money or property, or the doing of some act upon the faith of the purchase itself which could not he retracted; such as executing a release for a pre-existing debt. Hughes purchased at the sheriff's sale nothing more than the mortgagor's equity of redemption, and holds that, subject to the complainant's right of foreclosure.

Joseph Callender, for a good consideration, executed to Amariah Rollins his two promissory notes, the first dated the 20th of April, 1835, for the sum of $950, payable on the 1st day of May, 1837; the second of the same tenor, amount and date, payable on the 1st day of May, 1838. To secure the payment of these notes, and another note for the sum of $895, made by said Rollins, dated June 7th, 1838, and payable to H. M. Posey on the 1st day of May, 1839, which Callender had agreed to pay, Callender and his wife executed a mortgage on lot No. 2, in square No. 3, in the town of Port Gibson. The attorney who drew the mortgage described the two notes for $950 each as payable on the first days of January, 1837 and 1838, whereas they were due and payable on the first days of May, 1837 and 1838. The original notes are filed as exhibits, and charged to be same notes secured by the

mortgage, and that the misdescription as to the time of payment was a mistake of the attorney who drew the mortgage, which was not discovered at the time the same was executed. This mortgage was duly acknowledged and recorded. The note for $895 was paid at maturity. At the maturity of the next note, $550 was paid and credited on the same, leaving a balance due of $400. The last note was wholly unpaid.

In November, 1836, B. Hughes obtained two judgments against Callender, on which executions subsequently emanated, and were levied on the lot mortgaged to secure the payment of these notes. Under these executions the lot was sold by the sheriff, and B. Hughes, the owner of the executions, purchased the lot, and took possession of the same.

In the year 1837, Rollins transferred the note on which $500 had been paid to William Molder; and the note for $950, entirely unpaid, to James P. Parker, together with the mortgage, to secure the payment of said notes. Molder and Parker obtained judgments at law on these notes in May, 1839, and the executions thereon were returned *nulla bona*. Rollins then filed his bill for the use of Molder and Parker, to foreclose the mortgage on the lot bought by B. Hughes at sheriff's sale. Callender in his answer admits all the allegations of the bill. Hughes in his answer admits the allegations of the bill, except as to the mistake and misdescription of the notes in the mortgage; of this he denies all knowledge or notice, and claims to be a *bona fide* purchaser of said lot for a valuable consideration, without notice of the existence of said note.

THRASHER and SELLERS for complainant.

JAMES A. MAXWELL for defendants.

The CHANCELLOR.

The complainants seek to foreclose a mortgage given by the defendants, Callender and wife, upon a town lot in Port Gibson, to secure the payment of several promissory notes, payable to A. Rollins, and subsequently transferred to Molder and Parker. The notes are described in the mortgage as payable on the first of May,

A. Rollins, use of Molder and Parker, v. Callender and Wife and Hughes.

1837, and on the first of May, 1838. The notes produced are payable on the first of January, 1837, and the first of January, 1838. This misdescription is alleged to be the result of a mere oversight or mistake of the draftsman of the mortgage; and this allegation is fully sustained by the proof in the case. Subsequent to the date and registration of the mortgage, the defendant, Hughes, being a creditor of Callender, brought suit against him and recovered a judgment; upon which he caused an execution to issue, and had the same levied upon the mortgaged premises, and at the sale became himself the purchaser thereof, and now claims to hold the same discharged from the mortgage of the complainants, alleging that he is a *bona fide* purchaser, without notice of the alleged mistake in the mortgage in describing the notes.

The validity of this defence is the only question presented for my consideration, which raises at once the inquiry as to what facts constitute notice? as also what constitutes a *bona fide* purchaser in the legal sense of that phrase? The answer of Hughes admits that he knew of the existence of the mortgage, the same having been spread upon the public records; but denies that he had notice of the misdescription of the notes as to the time of their maturity. This mistake is, I think, unimportant in its bearing as to subsequent purchasers. Reference to the condition of the mortgage shows that the notes are accurately described as to dates, sums, and the names of the parties thereto. This I think was sufficient to communicate notice to the defendant of the substance of the whole transaction. He is there advised of the facts, that a mortgage existed upon the town lot, and that it was made to secure the payment of a specified sum of money, due from the mortgagor to the mortgagee, as evidenced by promissory notes of a specified date. A knowledge of these facts was at least sufficient to have superinduced some diligence and inquiry, which would have readily led to a knowledge of the mistake in the description of the notes.

It is now the settled doctrine in equity, that whatever has a reasonable certainty, as to time, circumstances and persons, is sufficient to put a party upon inquiry, and amounts to evidence of notice to him. Green v. Slater, 4 John. C. R. 38; Daniels v. Da-

A. Rollins, use of Molder and Parker, *v.* Callender and Wife and Hughes.

vidson, 16 Ves. 250; Smith *v.* Low, 1 Atk. 489; 2 Sugd. on Vendors, 290.

But whether the facts disclosed in the case amount to notice or not, they at least show that Hughes is not a *bona fide* purchaser, in the sense which entitles him to protection in a court of equity. He bought in the lot named in the mortgage, under his own judgment, for an antecedent debt, without paying any new consideration therefor. This did not constitute him a *bona fide* purchaser, within the legal acceptation of that phrase. Arnold *v.* Patrick, 6 Paige's C. R. 316. To constitute such a purchaser, there must be a parting with money or property, or the doing of some act upon the faith of the purchase itself, which could not be retracted, such as executing a release for a pre-existing debt. Jackson *v.* Campbell, 19 John. R. 282, 283.

I therefore conclude that Hughes purchased, at the sheriff's sale, nothing more than the mortgagor's equity of redemption, and that he holds that subject to the plaintiff's right of foreclosure.

Let the mortgage accordingly be reformed, as prayed for, and a reference be made to the clerk of the court to compute the principal and interest due thereon.